<em>Decree affirmed, with costs.</em>

(Decided 27th March, 1884.)

PERE WILMER HANSON, and CATHARINE R. RICHARDSON, and WILLIAM H. RICHARDSON, her husband *vs.* RICHARD C. JOHNSON.

*Ejectment—Adverse possession—Continuous possession by Tacking—Statute of Limitations,* (21 *James I, ch.* 16.)

A *féme covert* died in December, 1854, leaving a will, which was admitted to probate, but was not executed in due form to pass real estate as required by the Act of 1842, ch. 293, then in force, because the consent of her husband in writing was not annexed thereto, and also because it was not executed sixty days before her death. By said will she devised a farm to her husband for life, with remainder in fee to her nephew. Under it her husband on the 1st of January, 1855, entered into possession of the property, claiming title as tenant for life, and so continued in possession until the 5th of February, 1868, when he united with the nephew in a sale and conveyance to J., who thereupon entered upon said property, and continued in possession up to the 11th of April, 1882, when the heirs-at-law of the testatrix brought ejectment against him. HELD:

1st. That the claim of title and possession of the husband, as tenant for life under the will, being hostile to the title of the heirs-at-law, was as against them adverse and exclusive.

2nd. That the purchaser from the husband and nephew having immediately taken and held possession under the conveyance to him, his possession was added or tacked to the possession of the husband, making a continuous adverse possession of more than twenty years, which by the Statute of Limitations (21 James I, chapter 16,) was a flat bar to the right of the plaintiffs as heirs-at-law.

APPEAL from the Circuit Court for Kent County.

This was an action of ejectment, instituted on the 11th of April, 1882, by the appellants against the appellee. The case was tried upon an agreed statement of facts, which are sufficiently set forth in the opinion of the Court. By consent a *pro forma* judgment was entered in the Court below in favor of the defendant, with the right of appeal by the plaintiffs.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, IRVING, and BRYAN, J.

*D. Hopper Emory* and *Wm. A. Hammond,* for the appellants.

*James A. Pearce,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action of ejectment, brought by the appellants, as heirs-at-law of Catharine H. Wroth, to recover an undivided half interest in a tract of land, of which she died seized.

The facts are these : Mrs. Wroth died in December, 1854, leaving a paper purporting to be a will, by which she devised the farm in controversy to her husband, Peregrine Wroth, for life, with remainder in fee to her nephew, George A. Hanson.

The will was not executed in due form to pass real estate, as required by the Act of 1842, chapter 293, then in force, because the consent of her husband, in writing, was not annexed thereto, and also because it was not executed sixty days before her death. It was admitted, however; to probate by the Orphans' Court of Kent County, and under it her husband, on the 1st of January, 1855, entered into possession of the property, claiming title as tenant for life, and so continued in possession until the 5th of February, 1868, when he united with the remainderman, George A. Hanson, in a sale and conveyance of the same. to the appellee, and who thereupon entered upon said property, and has continued in possession up to the institution of this suit.

Mrs. Wroth never had any children, and the appellants, as heirs-at-law, are entitled to recover, unless their right is barred by the adverse possession of the appellee and of those under whom he claims.

A great deal has been said, as to what constitutes *adverse possession,* and it would be a wearisome task to examine at length the many cases in which this question has been considered. Prior to the Statute of 3 and 4 Will. IV, chapter 27, it was an ever-recurring and troublesome question in England, but by that Statute, passed in 1833, the doctrine of adverse possession, was virtually abolished, and by it possession of any kind for twenty years, was made a bar, unless there was either a payment of rent or an acknowledgment of some kind by the party in possession. The effect of the Statute, says Lord DENMAN, in *Culley vs. Doe, dem. Taylerson,* 3 *Per. and Dav.,* 539, is to put an end to all questions and discussions whether the possession of lands be adverse or not; and if one party has been in possession for twenty years, whether adversely or not, the claimant whose original right of entry occurred above twenty years before bringing the ejectment is barred. *Nepean vs. Doe, dem. Knight,* 2 *M. & W.,* 911; *Doe, dem. Pritchard vs. Jauncey,* 8 *C. & P.,* 99.

Hanson, *et al. vs.* Johnson.

This Statute is not, however, in force in this State, and the question of possession in this case, is one to be determined by Stat. 21 Jas. I, chap. 16, which provides that no one shall make an entry into any land but within twenty years after his right shall accrue.

Now when the question arose whether one was barred by twenty years possession, it was determined by considering whether he had been out of possession under such circumstances as had reduced his interest to a right of entry; for if he had, then as that right of entry would be barred by the Statute at the end of twenty years, the possession during the intermediate time was adverse to him. And in order to determine whether he had been out of possession under such circumstances as reduced his estate to a right of entry, it was necessary to inquire in what manner the person who had been in possession during the time held. If he held in a character inconsistent with and hostile to the title of the claimant to the freehold, the possession was adverse. 2 *Smith's Leading Cases,* 531; *Nepean vs. Doe, dem. Knight,* 2 *M. & W.,* 910; *Taylor, ex dem. Atkyns vs. Horde,* 1 *Burr.,* 60.

"Twenty years adverse possession," says Lord MANSFIELD, in *Taylor vs. Horde,* "is a positive title to the defendant: it is not a bar to the action or remedy of the plaintiff only, but takes away his right of possession."

The question then of adversary possession in this case, resolves itself into this, was the possession of Doctor Wroth, under whom the appellee claims, inconsistent with and hostile to the title of the appellants as heirs-at-law? And in regard to this question there ought not, it seems to us, to be any doubt. During the life-time of his wife he received, it is admitted, the rents and profits of the farm in controversy. To these he was entitled by virtue of his marital rights. Upon her death, this right ceased. He was not *tenant by the curtesy,* because his wife never had any children. He was not a *tenant by sufferance,*

Hanson, *et al. vs.* Johnson.

because an estate at sufferance is where one comes into possession by lawful title, but keeps it afterwards without any title at all. Or, as Lord COKE says, "one who originally comes in by right, but continues by wrong." It is a tenancy founded originally on contract and agreement, as a lessee for years, who continues in possession after the expiration of his term, and without a renewal of the lease, or a tenant at will, who holds over after the death or alienation of the lessor, or a tenant *per autre vie*, who remains in possession after the death of the *cestui que vie*. *Coke on Little.*, 57 *b*.

After the death of his wife, Doctor Wroth took possession, claiming a life estate under her will. His claim of title was inconsistent with and hostile to the title of the appellants as heirs-at-law. The property was a farm, under enclosure and under cultivation; his possession was actual, visible, and, according to all the authorities, *adverse to the title of the lawful owner*.

But then it is argued, to constitute adverse possession, one must claim the entire estate, or claim to the exclusion of all other rights. In one sense this is true. Possession will not be adverse if it be held under, or subservient to a higher title, nor if it be consistent with the interest or estate of the claimant, for instance, where the possession of one is the possession of the other, or where the estate of one in possession and that of the claimant form different parts of one and the same estate. The mere entry and possession of one tenant in common, or joint tenant, or coparcener, will not be adverse to the co-tenant, because the possession of one, is the possession of the other. To constitute adverse possession in such cases, there must be an *ouster*, an entry and possession, hostile to the title of the co-tenant. Nor will the possession of a tenant for years, or tenant for life, be adverse to the reversioner or heir in remainder.

The decisions in *Smith vs. Burtis*, 9 *Johns.*, 180; *Howard vs. Howard*, 17 *Barb.*, 667; *Doe, dem. Human vs.*

*Pettett*, 5 *Barn. & Ald.*, 223; *Dean, et al. vs. Brown*, 23 *Md.*, 16; *Bedell vs Shaw, et al.* 59 *N. Y.*, 46, were decided upon these well settled principles.

In this case, however, Doctor Wroth entered into possession, claiming a life estate under the will, the remainder being devised to another person. The estate claimed by him was a freehold, and as there could only be one possession or seizin of the same estate at the same time, his possession enured to the benefit of the remainder-man. His possession was in law the possession of the remainder-man, and as such it represented the entire estate, *his own estate for life*, and the *estate of George A. Hanson in remainder.* And his claim of title and possession being hostile to the title of the appellants as heirs-at-law, his possession was as against them, adverse and exclusive. The will was it is true invalid, but Doctor Wroth having entered into possession, claiming title under it, he would be *estopped* from denying the title of the remainder-man claiming under the same instrument. This was decided in *Board vs. Board, Law Rep.*, 9 *Q. B.*, 48. In that case, a tenant by the curtesy undertook to devise *the curtesy estate* to his daughter for life, with remainder to his grandson. Upon the death of the testator, the daughter entered into possession, and having been in possession for twenty years sold and conveyed the property in fee to the defendant. In the meantime the grandson sold his reversionary right to the plaintiff, and upon the death of the daughter, he brought an action of ejectment, and it was held, that the daughter having entered under the will, the defendant claiming under her, was estopped as against all those in remainder, from disputing the validity of the will, and that the plaintiff was entitled to recover.

MELLOR, J., said, "The only person who could dispute the possession of Rebecca, under the will, was the heir-at-law. He never disputed the possession, and his title to the estate is barred by the operation of the Statute of Limi-

tations. A person cannot say, that a will is valid to enable him to take a benefit under it, but invalid so far as regards the interests of those in remainder, who claim under the same will."

This case was decided, it is true, after the passage of the Stat. of 3 & 4 Will. IV, but the claim of title and possession by the daughter, being hostile and inconsistent with the title of the heir-at-law, her possession was adverse under the Stat. 21 Jas. I, as against the lawful title. And being adverse, the heir-at-law must bring his action within twenty years, or his title will be barred by the Statute of Limitations. It is better, says the law, that the negligent owner who has omitted to assert his right within the time prescribed by the Statute, should lose his rights than one should be disturbed in his possession, and harassed by stale demands after the proof on which his title rests may have been lost or destroyed. But whatever may be the reasons or the policy of the law, twenty years adverse possession is a bar to the title, without regard to the original right of the parties.

The possession being adverse and exclusive in this case, the only remaining question is, whether it has been continuous for twenty years? And this depends upon whether the possession of Doctor Wroth can be *united*, or in other words *tacked* to the possession of the appellee.

Now the possession of several distinct occupants of land between whom no *privity* exists, cannot, it is true, be united to make up the statutory period, for the reason, if one quits or abandons the possession, the owner will be deemed to be in the constructive possession of the property by reason of his title. The separate successive disseisins in such cases do not aid each other, and their several possessions cannot therefore be tacked, so as to make a continuity of possession.

But we take it to be well settled that where there is a *privity of estate* between the successive parties in posses-

Hanson, *et al. vs.* Johnson.

sion, then the possession of such parties may be united so as to make the twenty years required by the Statute. And it is equally well settled that such privity may be created by a sale and conveyance and possession under it, as well as by descent. As was said by TILGHMAN, C. J., in *Overfield vs. Christie,* 7 *S. & R.,* 177, "One who enters upon the land of another and continues to reside on it, acquires something which he may transfer by deed as well as by descent, and if the possession of such person, and others claiming under him, added together, amounts to the time limited by the Act of Limitations, and was adverse to him who had the legal title, the Act is a bar to a recovery." *Angell on Limitations,* 414, 420; *Wood on Limitations, sec.* 271; *Tyler on Ejectment,* 910.

In this case there was an adverse and exclusive possession of the farm in question by Doctor Wroth for thirteen years. He then united with George A. Hanson, the remainder-man, in a sale and conveyance to the appellee, who immediately entered and has continued in possession up to the present time; the possession of the appellee, thus added or tacked to the possession of Doctor Wroth, makes a *continuous adverse possession of twenty-seven years.* The possession under such circumstances is by the Statute of Limitations a flat bar to the right of the appellants as heirs-at-law. The judgment below must therefore be affirmed.

*Judgment affirmed.*

(Decided 27th March, 1884.)