ROBERT SOULSBY ET AL.

*vs.*

AMERICAN COLONIZATION SOCIETY ET AL.

*Trustees: title by adversary possession.*

By adversary possession trustees may acquire title to trust property sufficient to bar recovery by the heirs at law and residuary legatees of the founder of the trust.  p. 299

*Decided June 28th, 1917.*

Appeal from the Circuit Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Leigh Bonsal,* for the appellants.

*D. K. Este Fisher* and *John G. Johnson,* for the appellees.

*Charles F. Stein, Eugene O'Dunne* and *Donald B. Creecy*
filed a brief on behalf of Ferdinand C. Latrobe and James
W. Harvey, trustee, appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal arises from a misunderstanding of the mean-
ing and effect of the mandate together with the opinion of
this Court in the case of the *American Colonization Society
v. Robert Soulsby et al.,* reported in 129 Md. 605.

We need only refer briefly to the facts of the litigation for
they were set out very fully in the careful and comprehensive
opinion prepared by JUDGE PATTISON, on the former appeal.
Caroline Donovan in 1886 executed a declaration of trust,
in which she provided that, after her death, certain enumer-
ated real property should be held by specified trustees and
the net income paid over to the American Colonization Soci-
ety for the transportation annually to Liberia of such colored
persons as might desire to emigrate to that country; with the
further provision, that if in any one year the cost of trans-
portation for that year should not require the whole of the
net income for that year the income, or any balance, should
be used by the said society for the maintenance of public
schools for the education of colored children in Liberia. It
was provided that the trust was to be under the supervision
of a Court of equity, so, therefore, at the death of Caroline
Donovan, in March, 1890, the Circuit Court of Baltimore
City assumed jurisdiction of the trust; and, from that time
to the present, the trustees have collected the rents from the
properties and paid the net over to the society.

The American Colonization Society is a Maryland corpora-
tion, incorporated in the year 1831 (Chap. 314), and was
empowered under a new charter, passed in 1837 (Chap. 274,
Acts 1836), to purchase, have and enjoy any lands, by the
gift, bargain, sale, devise or otherwise of any person; to take
and receive any sums of money, goods or chattels that should
be given to it in any manner and to occupy, use and enjoy,
sell, transfer or otherwise dispose of the same as it should

"determine to be most conducive to the colonization, with their own consent in Africa, of the free people of color residing in the United States."

The appellants and petitioners, who are the heirs at law and residuary legatees of Caroline Donovan, filed their petition in this cause, praying that the trust properties might be delivered over to them, upon the ground that the trust was void. The reasons assigned for its invalidity were two-fold, or in the alternative. They contended, in the first place, that the declaration of trust was void as contravening the rule against perpetuties and for indefiniteness; and again that even though it should be found that for those reasons it was not void *ab initio,* yet, nevertheless, it had since become inoperative and void, because the objects and purposes for which it had been created could no longer be accomplished.

Demurrers were filed to the petition on various grounds, including the ground that adversary possession for several years more than the statutory period completely barred all recognition of the petitioners' claim. The lower Court overruled the demurrers and the trustees and the society appealed to this Court. This Court, in disposing of the appeals, entered the order as follows: "Order reversed and cases re-manded, the appellees to pay the costs." After the mandate was received below, the petitioners asked leave to amend the petition but this the Court refused to permit and entered a decree sustaining the said demurrers and dismissing the petition. From this decree the petitioners have taken the present appeal.

As we said in the beginning of this opinion, this appeal arises from a misconception of the effect of the order on the first appeal. The appellants have laid hold of certain passages in the opinion, the meaning of which, when considered with the whole of the text, gives no aid to the appellants' present contentions and were not intended to do so when adopted by us. From the passages they argue, that when this Court reversed the previous decree and remanded the cause, it must have intended that the petitioners were to be allowed

to amend.  The fact is, that this Court intended exactly what
it has intended in a great number of cases where similar
orders have been passed, where, by the opinion filed, it ap-
peared that the complainants' or petitioners' contentions had
been ruled against, that is, to have the lower Court enter the
decree of dismissal.

As stated above, the petitioners had two contentions, one
that the trust was void *ab initio,* the other, that, although
the courts should find that the trust was not void *ab initio,*
yet it must be found that it was void *now,* for the reason that
the purposes for which it had been created were no longer
available.  JUDGE PATTISON, in delivering the opinion of the
Court, first dealt with the former contention, and, after re-
viewing several of our leading cases treating of the rule
against perpetuities, announced our conclusion in the follow-
ing plain and unequivocal language: "Whatever may be the
law elsewhere, we, following the decisions of this Court, must
hold the trust in this case to be void because it is a perpetuity
in that it attempts to create an active trust which is required
to continue beyond the period limited by the rule, but al-
though the trust is void for the reason stated the petitioners
are barred from recovery upon the ground of its invaldity,
resulting from such cause, because of the adversary posses-
sion of the trustees of the trust property for a period of more
than twenty years, prior to the institution of these proceed-
ings."

And in support of the later part of the above, *Needles* v.
*Martin,* 33 Md. 618, was cited and quoted from with several
citations of authorities to the same effect.

This, then, became the law of the case, and the correct law
as we then thought and now think.  In our opinion, when we
held that the adversary possession by the trustee of the trust
property was a bar to its recovery by the petitioners, we in-
tended to say just what the words, in their ordinary mean-
ing, import.  That is, that whatever rights the petitioners
might have had at one time, had been lost because others had
acquired them through operation of law.  This absolutely

settled the case, in so far as the petitioners were concerned, without the necessity of adverting to the other contention of the petitioners, based upon the theory that the trust, at the time of its creation, was a valid one, but had since become void through the impossibility of carrying out its objects. But it was thought proper, and perhaps helpful as a matter of pleading, to point out why the allegations of the petition, that the grantor's objects and purposes were not being carried out, were insufficient and the demurrers thereto would have had to be sustained, if a different view had been taken of the question of adverse possession.

The lower Court by its order dismissing the petition correctly expressed the mandates of this Court.

*Decree affirmed, the appellants to pay the costs.*