FERDINAND C. LATROBE AND JAMES W. HARVEY,
TRUSTEES,

*vs.*

AMERICAN COLONIZATION SOCIETY ET AL.,

AND

CHARLES M. T. SOULSBY ET AL.

*vs.*

FERDINAND C. LATROBE AND JAMES W. HARVEY,
TRUSTEES.

*The Donovan trust: continuance and administration of—;
accounts.*

The Donovan trust, in favor of the African Colonization
Society, should be continued at least so long as the objects and
purposes of it exist, or so long as it can be executed in substantial conformity with the provisions of the deed now recognized
and administered under the supervision of the court; but when
its objects and purposes have ceased, or when the trust can no
longer be executed, pursuant to its provisions, a resulting trust
in favor of the heirs or devisees of Caroline Donovan will then
be recognized. p. 415

The court under whose jurisdiction the Donovan trust was
being administered ordered the trustees to pay to the Colonization Society a sum of money which an audit of the accounts
showed to be distributable to the society; on the appeal, the

court's action was affirmed; the trustees declined to make the payment unless the society distinctly agreed to use the money entirely for the purposes set out in the deed of trust; the society claimed the right to appropriate the sum for counsel fees; the court's order was sustained on appeal, the Court of Appeals holding that:                                                    p. 416

"The execution of the trust was under the supervision of the court, and it was not within the power or province of trustees, without the authority of the court, to impose the condition named, in view of the order previously passed directing it to be paid without such condition. It is, however, within the power of the court, either of its own volition or at the request of the trustees, if they have reason to believe that the moneys paid over by them to the society is not expended in accordance with the provisions of the trust, to pass such orders as it may deem necessary to assure the proper expenditure of the money pursuant to provisions of the trust."          p. 417

*Decided May 15th, 1919.*

Appeal from the Circuit Court of Baltimore City. (SOPER, C. J.)

The facts are stated in the opinion of the Court.

The causes were argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and CONSTABLE, JJ.

*Leigh Bonsal* (with whom was *Joseph C. France,* on the brief), for *Chas. T. Soulsby et al.*

*Eugene O'Dunne,* for *Latrobe and Harvey, Trustees.*

*D. K. Este Fisher* and *Wm. G. Johnson, of Washington,* for *American Colonization Society.*

PATTISON, J., delivered the opinion of the Court.

This is the fourth time this case has been before this Court. It was first before it in the *American Colonization Society* v. *Soulsby,* 129 Md. 605.

In that case the Court held, in accordance with the contention of the petitioners, the heirs at law and devisees of Caroline Donovan, that the declaration of trust executed by her to the trustees therein named, violated the rule against perpetuities in that it attempted to create an active trust which was required to continue beyond the period limited by the rule; but the petitioners were denied the right to recover the property described in said deed upon the ground of its invalidity resulting from such cause, because of the laches of the petitioners and the adversary possession of the trustees for a period of more than twenty years prior to the institution of the proceedings.

The case was again before us in *Soulsby* v. *American Colonization Society,* 131 Md. 296, on appeal from an order sustaining a demurrer to an amended petition filed by said petitioners. The ruling of the lower Court thereon was affirmed.

The case next came to this Court on four appeals in one record, in the *American Colonization Cases,* 132 Md. 532. Two of these were appeals by the State of Maryland; one from an order of Court sustaining a demurrer to a petition filed on behalf of the State by which it was sought to have the property mentioned in the first appeal declared escheated to the State as the result of the decision in that case; and the other from the action of the Court in overruling the exception on behalf of the State to the auditor's account by which a balance of money in the hands of the trustees was audited to be paid to the American Colonization Society.

This Court was of the opinion and so decided that the property did not escheat to the State and consequently held that the State had no standing enabling it to object to the distribution of the money in the hands of the trustees. The order in the first of these cases was affirmed, and the appeal dismissed in the second.

One of these appeals was taken by the American Colonization Society from the ruling of the Court in sustaining a demurrer to and in dismissing its petition in which it was claimed as the result of the decisions in the first appeal

(*American Colonization Society* v. *Soulsby*, 129 Md. 605), that: "The trustees named by Mrs. Donovan were its agents, that the property belonged to it, or at any rate that there was only a bare legal title in the trustees, which the society at its will and pleasure is entitled to have transferred to it, working a merger of the legal and beneficial title; that the trust upon which the property was held involved no active duties to be performed on the part of the trustees, and for that reason, as well, the trustees should be required to transfer to the society the legal title held by them." *American Colonization Society's case, supra.*

This Court, speaking through JUDGE STOCKBRIDGE, after discussing the contention of the petitioners, said: "The order of the Circuit Court sustaining the demurrer to the petition of American Colonization Society, to require a transfer to it of the legal title and dismissing that petition, will be affirmed."

The last of these appeals was from the action of the Court in overruling the exceptions of the Colonization Society to certain items appearing in the auditor's account. Important among them were the commissions allowed the trustees and the fees allowed the attorneys for the trustees, and the amount audited to the American Colonization Society at the suggestion of the counsel for the trustees, to wit: the sum of $2,-074.26. This Court after fully discussing and considering these items affirmed the action of the Court in allowing them.

The case now comes before us on two appeals in one record. The second of these (Appeal No. 29) is from an order sustaining a demurrer to a petition filed by *Charles M. T. Soulsby et al.* v. *Ferdinand C. Latrobe and James W. Harvey, Trustees,* in which the Court was asked to pass an order "declaring that the provisions of the declaration of trust, of June 22nd, 1886, are entirely at an end, and the property therein mentioned is now disposed of by the residuary clause in the will of Caroline Donovan, in favor of her nine nephews and nieces therein mentioned, and that the Trustees may be directed to convey whatever interest they may now have in

said property to your petitioners, the representatives of said residuary devisees."

The petitioners are the same persons who filed the amended petition in *American Colonization Society* v. *Soulsby,* 129 Md. 605, the only change therein being that Robert H. Souls-by, Amelia Soulsby, Foster and Lucy Soulsby Mitchell, the children and residuary devisees of Robert Soulsby, one of the original petitioners who has died since the decision in that case are substituted for him.

The petition alleges that Caroline Donovan made the deed of trust above referred to, "by implication reserving to herself as the creator of the trust all right and title in said property except as conveyed for the purposes therein stated," and that "all right, title and estate which remained in her, subject to the trust created by said deed, were devised by her under the residuary clause of her will to her nine nephews and nieces and the petitioners now represent and stand in all respects in the place of said nine nephews and nieces, the residuary devisees of Caroline Donovan."

The petition further alleges that the case of the *American Colonization Society* v. *Soulsby,* 129 Md. 605, "was almost entirely presented from the standpoint of the nephews and nieces of Caroline Donovan being her heirs at law, and the briefs in the case and opinion of the Court almost entirely confined themselves to the position of the nephews and nieces of Caroline Donovan being her heirs at law and there was no other consideration given to the fact that said nephews and nieces were the residuary devisees of Caroline Donovan under her will and now stand in exactly the same position as Caroline Donovan would have stood had she been living."

It further alleges that the Court in that case held the deed void as a perpetuity and that the opinion contained expressions "which to a certain extent, indicated that the American Colonization Society was nevertheless still the *cestui que trust* to whom the trustees should account, and it was to a certain extent indicated that the American Colonization Society, the *cestui que trust,* held adversely to the Donovan heirs." That

in their opinion the claims of the society were by the opinion of the Court "entirely put an end to" and that from such decision it is "perfectly clear" that the society "has no rights whatever, and is, therefore, an utter stranger in this case, having no claims whatever on the property of Caroline Donovan," and that "the receipt of income by the American Colonization Society improperly (as it had no rights) cannot be considered as an adverse holding to the residuary devisees of Caroline Donovan." That the only trust which was being administered in this Court was the trust created by Caroline Donovan by deed of trust, of June 22nd, 1886, and as said trust has been declared by the Court of Appeals of Maryland to be void, and as the Court of Appeals has further decided that neither the American Colonization Society nor the State of Maryland has any rights in said property," "there is nothing further to be done in this case except for this Court to direct the trustees to convey the property which had been conveyed in trust on June 22nd, 1886, in accord with the disposition of the same made by Caroline Donovan, in the residuary clause of her said will."

It further alleges that the legal effect of the deed of trust, of June 22nd, 1886, only became definite on January 10th, 1917, when the case in 129th Maryland, p. 605, was decided, that at that point of time the exact rights of Caroline Donovan and her residuary devisees became clear, and the trust which had been attempted to be created by Caroline Donovan was at that time put an end to, and the rights of Caroline Donovan and her residuary devisees became absolute; * * * that if Caroline Donovan were now alive, the trustees selected by her for carrying out a limited, specific trust could not, upon a declaration by the Court of Appeals that said trust was void, take the position that Caroline Donovan had lost her rights in the property, and your petitioners submit, that Caroline Donovan's residuary devisees stand in exactly the same position which Caroline Donovan herself would have occupied were she now alive. That in asking that the trustees should now convey to them all the property mentioned in the

deed of trust, of June 22nd, 1886, that they are the only persons who can possibly have a beneficial interest in the property, unless it be held that the trustees who have only acted in a representative capacity at all times, should be declared to have a beneficial interest for themselves.

The questions presented by this petition have in the main been answered by this Court in its opinions heretofore filed in the former appeals.

In the first appeal we held that the deed was void as it violated the rule against perpetuities, but at the same time held that the petitioners were barred from recovery because of the adversary possession of the trust property for a period of more than twenty years prior to the institution of the proceedings. The authority for so holding is found in the case of *Needles* v. *Martin,* 33 Md. 609, and other cases therein cited. The facts of that case as stated in the syllabus, were, that "A testator, by his will, executed on the 5th of February, 1843, bequeathed certain leasehold property and a small ground rent to his wife during her life, and after her death to certain named persons, or to the survivors of them at the time of her death, and to their heirs and assigns. He also bequeathed to them certain stock of the City of Baltimore, together with all the rest and residue of his property. Simultaneously with the execution of his will, the testator executed another paper in the form of a letter of instructions to the same persons, in which he declared his intentions in respect of the property bequeathed to them in his will—that it should be held in special trust, and the net revenue and proceeds thereof, as fast as the same might accrue, be applied 'to the education of free colored persons in the City of Baltimore.' The paper also provided for filling any vacancy which might occur by the death, disqualification or resignation of any of the trustees, in order to carry into effect and perpetuate the intentions of the testator in relation to the education of free colored persons. Both papers were deposited with the Register of Wills for safe keeping. On the day following the execution of his will the testator died; the will was admitted

to probate, and the other paper with the testimony taken in relation to it, were ordered to be recorded. The widow died in January, 1850, when the trustees took possession of that part of the property to which she had had a life estate. In 1867, the leasehold property was sold by the trustees and the proceeds invested in Baltimore City stock." Upon a bill being filed by a nephew and next of kin of the testator to have the trust thus created declared void, it was held by the Court that the trust was void for *uncertainly and as creating a perpetuity;* and it was also held that the petitioner's right to relief so far as the City stock taken into possession by the trustees was concerned, was clearly barred by the statute of limitations. The Court stated the general rule applying in such cases, which will be found in the opinion in the first appeal, and after stating the rule said: "In the case now before us, the appellants never did recognize the appellee as their *cestui que trust,* but took possession of part of the property about twenty-four years before the filing of the bill, and have held that portion of it ever since, and applied the income thereof for the benefit of other parties. * * * During all this time, he has lived in Baltimore where the appellants resided and held the property, and in the Orphans' Court of which city the will and declaration of trust were recorded and open to his inspection. After such a lapse of time, during which it is not even alleged that he was under any disability, his right to relief, so far as the city stock taken into possession by the appellants is concerned, is clearly barred by the Statute of Limitations."

In *Soulsby* v. *American Colonization Society,* 131 Md. 296, this Court reiterated what it had said in the former appeals as to the deed being void, for the reasons therein stated, and the effect of the adversary possession of the trustees upon the right of the petitioners to recover.

In the appeal from the order sustaining the demurrer to the petition of the American Colonization Society against the trustees (132 Md. 531), this Court held, speaking through JUDGE STOCKBRIDGE, that no right accrued to the Coloniza-

tion Society either legal or equitable because of such deed. It was certainly not the intention or purpose of Mrs. Donovan that the trustees named in said deed should take an entire, absolute fee simple estate in the property conveyed by it, nor was it so regarded by the trustees themselves, for upon the death of the grantor, Mrs. Donovan, as shown by these proceedings, they petitioned to the Circuit Court of Baltimore City asking that it supervise the execution of trust, whereupon, after answer thereto by the Colonization Society admitting the facts and consenting to the passage of a decree, a decree on the 25th day of March, 1890, was passed by the said Court under which it assumed supervision of the execution of the trust as prayed, and it ordered and decreed that the said trustees should report annually to the Court during the continuance of the trust. That thereafter the rents from the warehouses or property mentioned and described in the declaration of trust were collected by the said trustees named in the deed so long as they lived, and the same have ever since been and are still being collected by their successors and the net rents so collected paid to the American Colonization Society.

The trustees, having applied to the Court of Equity asking it to assume supervision of the execution of the trust created under the provisions of said deed, and having undertaken the execution of the same under the decree of the Court, which is still in force, are, we think, estopped from withholding from the Society the beneficial interest in the property recognized by the decree. *Hanson* v. *Johnson,* 62 Md. 25. It may be because of such fact that the relation so created between the trustees and the Society may become perpetual and violate the rule against perpetuities, which result we have condemned when the same arose out of the provisions of said deed, but if this should follow it will not be unlike those cases in which this Court has recognized the validity of the title to property held by religious societies based upon adversary possession, when, in violation of the declaration of rights, the required legislative sanction has not been obtained.

The trust, we think, should be continued at least so long as the objects and purposes of it exist or so long as it can be executed in substantial conformity with the provisions of the deed now recognized and administered under the supervision of the Court, but when its objects and purposes have ceased or when the trust can no longer be executed, pursuant to its provisions, a resulting trust in favor of the heirs or devisees of Caroline Donovan will then be recognized.

It may be that some of the expressions found in the opinion in 131 Md. are apparently inconsistent with what we have here said, but the decision of the Court in affirming the order appealed from was correct, as the amendments made to the original petition not only appear to be inconsistent with other allegations of the petition, but such amended petition was not sufficiently comprehensive to entitle the petitioners to the relief sought.

The order appealed from will be affirmed.

The other appeal (No. 28) is from an order sustaining the exceptions and demurrer filed by the American Colonization Society to the answer of the trustees to the petition of the American Colonization Society. This order is as follows:

"It is thereupon this 30th day of December, 1918, adjudged and ordered that the said exceptions and said demurrer be and each of them is hereby sustained, and, the said trustees not desiring leave to answer further, it is further adjudged and ordered that the said trustees pay over immediately to the American Colonization Society the sum of $2,074.26 distributed to it by the auditor's account filed in this cause on July 21st, 1917, and ratified on November 21st, 1917; and that they file in this cause a report of their collections and disbursements of rents from the warehouses mentioned in these proceedings since the dates of the last tiems of collections and disbursements dealt with in said auditor's account, so as to bring the accounting up to date; and that upon said report being filed the same be and it is hereby referred to the auditor of this court to state an account wherein, after making allow-

ance to the trustees for their proper disbursements and commisions, the net rents shall be distributed to the American Colonization Society."

It appears from the record that the trustees, through their counsel, declined and refused to pay over to the Colonization Society the amount distributed to it—$2,074.26—by the auditors' account previously stated and ratified by the lower Court, and the action of the Court in so doing affirmed by this Court, unless it be received and accepted by it with the "distinct and unequivocal understanding" that the money so paid to it by the trustees should be used "entirely and exclusively" for the purposes and objects set out in the deed of trust. The offer of such payment was made, as we have said, by the trustees to the attorneys of the Colonization Society and by them the proposition was submitted to its Board of Directors, who passed a resolution in which it is said:

"That as an inevitable incident of the litigation instituted against it in July, 1915, and continued to the present time, with respect solely to this very fund, it has incurred liabilities for counsel fees and disbursements which can only be paid out of the income from this property, and any agreement by it to the effect that no part of said fund should be employed for that purpose would involve it in a dishonorable repudiation of just claims legitimately payable only from said fund. For these reasons, the American Colonization Society is unable to accede to the demands made upon it by the trustees, Messrs. Latrobe and Harvey, transmitted through their counsel, Mr. O'Dunne, in the letter of April 17, 1918."

The contents of this resolution, including the passage that we have quoted, were communicated by the society through their counsel to the trustees, with the request that they pay over the amount due them, which it appears was not done, and the petition, upon which the order appealed from was passed, was filed.

The execution of the trust was under the supervision of the Court, and it was not, we think, within the power or province of the trustees, without the authority of the Court, to impose the condition named in view of the order previously passed directing it to be paid without such condition.  It is, however, within the power of the Court either of its own volition or at the request of the trustees if they have reason to believe that the moneys paid over by them to the society is not expended in accordance with the provisions of the trust, to pass such orders as it may deem necessary to assure the proper expenditure of the money pursuant to provisions of the trust.

The order appealed from will be affirmed.

> *The two orders appealed from affirmed, the costs in both cases to be paid out of the fund.*