Appellant complains of a decree against her rendered by the Circuit Court upon a bill for accounting brought by appellee. For convenience the parties will be referred to as they appeared in the Circuit Court, where appellant was defendant and appellee was plaintiff.
The parties were married on October 19, 1940, divorced January 26th, 1942, remarried July 24th, 1942, and again divorced May 29, 1946. During all this time the defendant was the lawful wife of another *Page 330 
man, and the plaintiff was ignorant of that fact.
On October 11th, 1945, the plaintiff instituted suit against the defendant seeking to have a constructive trust in his favor declared upon the real estate hereafter mentioned. This suit was dismissed with prejudice on May 8, 1946, during the pendency of the second divorce suit between the parties, as a result of a settlement arrived at between them at that time.
The present litigation was begun by the filing of a bill by the plaintiff on July 19, 1946, which is very similar to the bill which was dismissed with prejudice in connection with the second divorce of the parties. On November 6, 1946, an amended bill was filed in which plaintiff alleged that since the filing of the original bill he had discovered the existence of defendant's real husband. This amended bill charges defendant with fraud in marrying plaintiff at a time when she was the wife of another man and seeks an accounting for various funds turned over by plaintiff to defendant. It also attacks the settlement between the parties and the decree dismissing the former bill with prejudice on the same grounds.
After answer by the defendant was filed a master was appointed, who took voluminous testimony and made detailed findings of fact which, for the most part, we approve.
The evidence amply sustains the finding that from the date of the first marriage of these parties until their final divorce the defendant was the wife of another man, that she concealed this fact from the defendant and that the defendant did not discover the truth until shortly before the filing of the amended bill in this case.
The defendant was guilty of fraud when she married the plaintiff while she was the lawful wife of another man. This fraud consisted of implied representation that she was single when she contracted each marriage and of remaining silent when it was her duty to speak, and continued as long as her silence continued. It was present at all times during their cohabitation and permeated every act that was in anyway based upon the validity of the marriage or the obligations which would have existed from the plaintiff to the defendant had their marriage been valid. Any property transaction between husband and wife is presumed to be entered into with the mutual rights and obligations of the parties in mind, unless and until the contrary clearly appears. Any property settlement had between husband and wife in connection with and in contemplation of a divorce is presumed to have as its basis the amicable adjustment of the economic matters incident to the divorce, important among which are the rights of inheritance, dower and alimony. Fraudulent concealment of a fact, which, if known, would reasonably be expected to influence the nature of such a settlement renders it avoidable. It is not necessary for us to consider the defendant's claim that she acted in good faith, believing that her real husband had divorced her. The least that she could have done in good faith was to have fully advised plaintiff before their marriage of the former husband and of the facts upon the basis of which she thought she had been divorced. We are satisfied that she did not do this.
The decree appealed from is correct insofar as it declares the marriages between these parties to have been void and finds the defendant guilty of continuing fraud upon the plaintiff beginning with their first marriage and continuing until after their final divorce. The plaintiff was, therefore, entitled to an accounting from the defendant with respect to the funds which he turned over to the woman he supposed to be his wife.
The Master found that these funds consisted of the following amounts: $600.00 during the year 1940; $3,900.00 during the year 1941, and sums aggregating $21,122.85 between January 1, 1942 and the final separation of the parties in February, 1946; making a total of $25,622.85. Of this amount she returned to him by various checks $2,077.94. *Page 331 
It appears that the parties actually lived together very little. During some three years of the time they were supposedly married the plaintiff was in the merchant marine, and at home only for short visits and at other times his employment kept him away from home much of the time. Without the knowledge, of the plaintiff, the defendant became a "freedealer".
With the funds turned over to defendant by plaintiff, supplemented by some earnings of her own and the proceeds of an insurance policy owned by her at the time of the first marriage, the defendant supported herself, and paid the family living expenses during the times the parties actually lived together and acquired three parcels of real estate, consisting of a farm in Oklahoma, a one-half interest in an apartment house in Dade County and a home in Dade County, title to all of which was taken in the name of the defendant.
It is upon this property that the plaintiff sought, by the bill filed October 11, 1945, to impose a constructive trust.
In the settlement made between the parties incident to the second divorce the defendant conveyed the farm in Oklahoma to the plaintiff, and gave him a mortgage in the amount of $4,000.00 on the apartment house and another mortgage in the amount of $4,000.00 on the home. The defendant promptly sold the farm for $5,000.00. The apartment house was later sold and plaintiff received payment of his mortgage in the amount of $4,000.00.
It appears that the home was, at the time of the taking of testimony in this case, still subject to a purchase mortgage in the sum of $2,000.00, but that it, at that time, had a market value of $30,000.00. It also appears that the plaintiff received rentals from this real estate as follows: From the apartment house $1,650.00 and from the home $6,440.00.
The master also found that the defendant had proven expenditures for "living expenses" in the sum of $10,547.53, which he held should be chargeable equally to the parties. He further held that an item of money withdrawn by defendant from her bank account by check dated July 10, 1945, should be chargeable to the parties equally.
During the progress of the case it further developed that the defendant had, prior to the final separation of the parties, executed and placed in the hands of a lawyer who represented both the parties two deeds transferring the home from her name to both the parties as tenants by the entireties. The Court later held that these deeds had been sufficiently delivered to vest title to the property, and consequently after the divorce the parties each owned a one-half interest in the home.
Anticipating this finding with reference to the title to the home, the Master stated an account between the parties as follows:
 Debits Credits.
Amount contributed during 1941
 by Paul B. Beidler $ 4,500.00
Amount contributed from April
 1942 to Sept. 12, 1945, as per
 Pl. Ex. #11 21,122.85
One-half of rents received from
 farm due Paul B. Beidler 825.00
One-half of rent from
 9305 N.E. 9th Avenue due P.B. Beidler 3,220.00
Interest in Apartment House 4,000.00
Amount of checks to Beidler Ex
 #2 $ 2,077.94
Amount received from farm 5,000.00
Amount received from Mortgage
 on apartment house 4,000.00
Value of 1/2 interest in
 9305 N.E. 9th Avenue by deed held by
 Terry 15,000.00
 __________ ___________
 Total Debits .................. $26,077.94 $33,667.85
Less credit due Beidler for 1/2 of
 living expenses and 1/2 of withdrawal
 made July 10, 1945 6,434.37
 __________
Net Debits $19,643.57
Balance due Beidler $14,024.28
 ===========================

The item of $4,000.00 credited to the plaintiff for "Interest in Apartment House" should not have been credited to him. To the extent that this apartment house was purchased with funds provided by plaintiff, he has received credit for such funds as cash and should not be again credited with the value of the building. The master apparently acted upon the theory that, because defendant gave the plaintiff a mortgage on her interest in the building in the sum of $4,000.00, this sum *Page 332 
probably represented only half the value of this half interest. We hold that there was insufficient evidence to justify this conclusion. This building has been sold. The record does not disclose the sales price. If plaintiff is to claim a profit was made on this sale, it was his duty to show such profit. Or, if he claims the cost was more than $4,000.00 he should show that fact. Defendant was a witness and plaintiff had every opportunity to bring out the true facts. Under such circumstances he cannot rest upon so vague an inference.
The master made liberal allowances for the maintenance of the defendant and was liberal to her in charging her with only half of a check drawn by her to herself on July 10, 1945. But in his accounting the sum of these items, $6,434.37, was listed as "credit due Beidler for 1/2 of living expenses and 1/2 of withdrawal made July 10, 1945." Assuming the correctness of the amount it would have been proper to credit the plaintiff with amounts expended by him for the support of a woman not his wife had he made the expenditures. The master's report clearly shows that these expenditures were made by the defendant from money which had already been charged to her. If, as the master found, half of the living expenses and half of the check of July 10, 1945, are properly chargeable to the plaintiff, then, since they were paid by defendant she should be credited and not charged with this amount. Adjustment of these two items should, according to the master's findings, leave a balance in favor of the defendant in the sum of $2,844.46.
The Chancellor did not follow the Master's findings as to the amount he recommended to be decreed against the defendant. He apparently followed the statement of the account prepared by accountants of the plaintiff resulting in a reflected balance of $12,066.15 in favor of plaintiff. This statement followed the Master in crediting plaintiff with an item of $4,000.00 representing interest in the apartment house. For the reasons pointed out above, this was incorrect. These accountants correctly transferred the item of living expenses from a credit in favor of the plaintiff to a credit in favor of the defendant. In doing so, however, they eliminated from the item of living expenses the check of July 10th, 1945, being of the opinion that this lump sum withdrawal should be charged exclusively against the defendant. In doing this we find the accountants were correct. There is another error in the accountant's report. They considered the value of the home on a cost basis of $5,250.00 for a one half interest, instead of its present value of $15,000.00 for a one half interest. With the errors just mentioned corrected, this statement would reflect a balance due the defendant in the sum of $1,683.95.
For some reason, not explained, neither the Master nor the plaintiff's accountants took into consideration the fact that the home according to the evidence was still subject to a mortgage in the amount of $2,000.00.
In cases of this kind no inflexible formula for adjusting the rights of the parties can be fixed. Each case must be judged in large measure upon the peculiar equities which may be found in that case. We hold that in this case the most equitable solution is to charge the defendant with all sums of money turned over to her by the plaintiff and to charge her with interest on these sums at the legal rate of six per cent as follows:
In 1940 the sum of $600 $ 600.00
 Interest from Jan. 1, 1941 to date of decree,
 Nov. 12, 1948 Approximately 7
 years, 10 1/2 months 283.50
In 1941 the sum of $3,900.00 3,900.00
 Interest from Jan. 1, 1942 to date of decree,
 Nov. 12, 1948 Approximately 6
 years 10 1/2 months 1,608.75
Between Jan. 1, 1942 to Feb. 1, 1946, (the
 approximate time of last separation)
 $21,122.85, less amounts returned by defendant
 to plaintiff $2,077.94, net 19,044.91
 Interest is computed on this sum from
 the average date of the period during
 which the payments were made (Jan.
 15, 1944) to the date of decree, Nov. 12,
 1948, 4 years 10 months $ 5,522.96
 __________
Total Charges $30,960.12

As against these charges, the defendant is entitled to credits for property and *Page 333 
money transferred by her to the plaintiff as follows:
Farm in Oklahoma 5,000.00
Mortgage on Apartment House (since paid) 4,000.00
One half interest in home, arrived at as
 follows: Value of home $30,000.00 less
 outstanding mortgage, $2,000.00, net value
 of Home $28,000.00, half of which is Moneys
 expended by defendant for the use
 of plaintiff $14,000.00
One fourth of money spent by defendant
 for "living expenses" 2,636.88
 __________
Total Credits $25,636.88

The final decree should have been in favor of the plaintiff and against the defendant for the net difference between the charges and credits as above outlined, or the sum of $5,323.24 before taking into account the judgment on the common law side of the court in favor of defendant and against the plaintiff presently discussed.
In the above statement we have allowed as a credit in favor of the defendant only one fourth of the amount expended by her and charged to living expenses of both parties. The Master allowed defendant a credit of half of these living expenses. The master found, however, that plaintiff was actually residing with defendant during only about eight months out of thirty-seven months that plaintiff served in the merchant marine and the evidence shows that a large part of the remainder of the time that the parties were supposedly married to each other they did not actually live together. The master was too liberal to defendant in this respect. Of course, any attempt to separate these living expenses must be, for the most part an estimate, but we feel that, from all the evidence only one fourth of these expenditures should be charged against the plaintiff.
In its final decree the Circuit Court allowed as an offset against the decree in favor of the plaintiff, a judgment in favor of the defendant against the plaintiff entered on the common law side of the Court on a claim for unliquidated damages which was pending during the progress of the plaintiff's suit for accounting. This judgment was in the amount of $7,500.00. We find that the facts before the Court justified this set-off. Since the amount which we find to be due by the defendant to the plaintiff on the accounting to be less than the judgment, the decree should provide for a credit against the common-law judgment for the amount above stated and the judgment should be satisfied only to that extent.
Appellant assigns as error the amount of the master's fee allowed. While the allowance seems somewhat high under the decisions of this Court, we do not hold that the Chancellor abused his discretion in making the allowance. Had counsel for the respective parties been so inclined they could have presented all the facts of the case in fewer hearings and reduced the testimony to approximately half of the more than seven hundred pages that it was necessary for the master, the Circuit Court and this Court to study. This would have resulted in a smaller Master's fee and reflected greater credit upon counsel who in other respects have represented their clients in an extremely able manner, and been of great assistance to the Court in determining the rights of these parties.
As above noted, the Master's report did not take into account the balance due on the mortgage on the home in the amount of $2,000.00 which is reflected by the evidence. If that mortgage has been paid other than by equal contribution between the parties, proper credit should be allowed the party making the payment in the decree to be entered by the Circuit Court in accordance with this opinion.
The mortgage on the home executed by defendant to plaintiff in the amount of $4,000.00 has not been taken into account in this accounting. Since it was a part of a settlement which is not recognized, and since the rights of the parties have been fully adjusted without considering it an asset or liability of either party, it should be decreed to be cancelled.
The decree appealed from is reversed, with directions to enter a decree in conformity with the views expressed in this opinion.
ADAMS, C.J., and CHAPMAN and HOBSON, JJ., concur. *Page 334